UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN GRIECO, | Civil Action No. 15-7881 (FLW) |
| Plaintiff, | |
| v. | OPINION |
| GARY LANIGAN, et al., | |
| Defendants. | |

**WOLFSON, United States District Judge:**

I.   **INTRODUCTION**

Defendants Gary M. Lanigan, New Jersey Department of Corrections ("NJDOC"), New Jersey State Prison ("NJSP") and Stephen D'Ilio[1] (collectively the "Moving Defendants") have moved to dismiss Plaintiffs' Complaint for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6).[2] For the reasons stated in the foregoing Opinion, the Court grants the motion to dismiss the federal claims against the Moving Defendants but denies without prejudice the motion to dismiss the NJTCA claims at this time.

II.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

  a.  **Facts Regarding the Alleged Assault**

On March 23, 2015, Plaintiff was allegedly housed alone in a cell on 7B Wing, an administrative segregation unit of NJSP. (1-1, Complaint at ¶¶ 10-12.) The Complaint alleges

---

[1] Stephen D'Ilio is improperly pleaded in the Complaint as "Stephen D'Illio."

[2] The Court notes that it is not clear from the Complaint and attachments whether Plaintiff has sued the NJDOC as an entity separate from NJSP. (*See* ECF No. 1-1.) Because Defendants have moved to dismiss on behalf of both NJDOC and NJSP, the Court will consider whether Plaintiff has stated federal claims against either the NJDOC or NJSP.

1

that the only persons with access to Plaintiff's cell were NJSP corrections officers and personnel. (*Id.* at ¶ 12.)  The Complaint further alleges that in the early morning hours of March 23, 2015, five "John Doe" corrections officers entered Plaintiff's cell and savagely beat him, causing serious injuries to his head. (*Id.* at ¶¶ 15-19.)  The John Doe corrections officers also allegedly left Plaintiff bleeding and unconscious on the floor of his cell for several hours.  (*Id.* at ¶¶ 20-21.) Plaintiff has also sued "John Does 6-10," who are described in the Complaint as "supervisory staff with direct supervising authority over John Does 1-5 at NJSP . . .  on the night and morning of March 22 to March 23, 2015, who on information and belief failed to provide adequate training and supervision to John Does 1-5."  (*Id.* at ¶ 9.)

### b.  Facts Regarding the Alleged Involvement of Defendants Lanigan and D'Ilio

The "Parties" section of the Complaint includes the following general allegations regarding Defendants Lanigan and D'Ilio:

> 5.      Garry [sic] M. Lanigan is the Commissioner of the New Jersey Department of Corrections and is responsible for the custody and care of inmates housed in State correctional facilities, including New Jersey State Prison, and has his principal place of business at Whittlesey Road, Trenton , NJ 08625, in the County of Mercer and is being sued in his official and personal capacity.
>
> . . . .
>
> 7.      Stephen D'Illio [sic] was the administrator of the New Jersey State Prison and was responsible for the custody and care of inmates housed at the New Jersey State Prison located at 300 2nd Crass St., Trenton, NJ 08625 Mercer County, and was responsible for the proper training and supervision of all John Doe Defendants, and is being sued in his official and personal capacity.

(*Id.* at ¶¶ 6-7.)  The "Background Information" section of the Complaint, which describes the alleged assault on Plaintiff, alleges that "Defendants Gary M. Lanigan , NJDOC, Stephen D'Ilio, and John Does 11-15, had a duty to train officers and to protect [Plaintiff] from the malicious, wanton and reckless behavior of John Does 1-5.  (*Id.* at ¶ 22.)  In Count I, brought pursuant to

2

the New Jersey Tort Claims Act ("NJTCA"), the Complaint alleges that "Gary M. Lanigan, Stephen D'Illio [sic], and John Does 6-10 are responsible for the training and supervision of John Does 1-5 and failed to provide adequate and appropriate training and supervision." (*Id.* at ¶ 29.) Count II of the Complaint, brought pursuant to 42 U.S.C. § 1983, alleges that "[t]he use of force by John Does 1-5 and the failure of Stephen D'Illio [sic], Gary M. Lanigan, the NJDOC, or John Does 6-10 to supervise and protect Mr. Grieco or to appropriately train John Does 1-5, was a violation of the 8th Amendment rights of Mr. Grieco." (*Id.* at ¶ 44.)

### c. Procedural History

Plaintiff, who is represented by counsel, initially filed his two-count Complaint in Mercer County Superior Court on October 10, 2015. The matter was removed by Defendants NJDOC and Gary Lanigan on November 4, 2015 (ECF No. 1, Notice of Removal.) Defendants Lanigan, NJDOC, and NJSP filed a motion to dismiss the Complaint on November 24, 2015. On December 21, 2015, Plaintiff filed opposition to the motion through counsel. (ECF No. 8.) On December 31, 2015, Defendants Lanigan, NJDOC, and NJSP filed their reply brief. (ECF No. 9.) Meanwhile, on December 17, 2015, Defendant D'Ilio was served with the Complaint, and requested an extension of time within which to answer or otherwise respond to the Complaint. (*See* ECF No. 10) Defendant D'Ilio subsequently moved to dismiss the Complaint on January 19, 2016. (ECF No. 11.) On January 26, 2016, Plaintiff filed opposition to the motion through counsel. (ECF No. 12.) On February 2, 2016, Defendant D'Ilio filed his reply brief. Both motions are now briefed and ready for disposition.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R .Civ. P. 12(b)(6). On a motion

to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create what amounts to a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit has required a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. 678–79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the

4

analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

## IV.    ANALYSIS

Defendants Lanigan, NJDOC, and NJSP argue that the § 1983 claims against NJDOC and NJSP, and the § 1983 claims against Lanigan in his official capacity must be dismissed because those Defendants are not "persons" subject to suit pursuant to § 1983.  They further contend that "[a]ll remaining Section 1983 claims against moving [D]efendant Lanigan based on failure to train or supervise must be dismissed because plaintiff fails to allege any personal involvement on his part in the events of March 23, 2015, and at best are based on an impermissible theory of *respondeat superior* liability."  (ECF No. 4-1, Lanigan Moving Br. at 2.) Finally, they contend that "all tort claims brought pursuant to the New Jersey Tort Claims Act ("TCA") . . . . must be dismissed because Plaintiff fails to allege facts supporting these claims." (*Id.* at 2-3.)

Similarly, in his motion to dismiss the Complaint, Defendant D'Ilio argues that

> All Section 1983 claims against D'Ilio in his official capacity, must be dismissed because those claims are not against "persons" subject to suit pursuant to the statute. All remaining Section 1983 claims against moving defendant D'Ilio based on failure to train or supervise must be dismissed because plaintiff fails to allege any personal involvement on his part in the events of March 23, 2015, and at best are based on an impermissible theory of respondeat superior liability.
>
> Finally, all tort claims brought pursuant to the New Jersey Tort Claims Act ("TCA"), against defendant D'Ilio, must be dismissed because plaintiff, again, fails to allege facts supporting these claims.

(ECF No. 11-1, D'Ilio Moving Br. at 2.)

5

As noted above, the Complaint currently before the Court alleges violations of state law under the NJTCA and violations of Plaintiff's Eighth Amendment rights under section 1983. The Court begins its analysis with Plaintiff's § 1983 claims.

### A. The § 1983 Claims Against NJDOC, NJSP, and the Official Capacity § 1983 Claims Against Defendants Lanigan and D'Ilio.

The Court will grant the motion to dismiss the § 1983 claims against NJDOC and NJSP because these entities are not persons under § 1983. It is well-established that the state and state entities are not persons for purposes of § 1983. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 64, 70–71 (1989) (holding that state is not a "person" within the meaning of Section 1983).

Individual defendants, such as Defendants Lanigan and D'Ilio, however, may be sued under § 1983 in their official and personal capacities. "[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). Thus, "[s]uits against state officials in their official capacity therefore should be treated as suits against the State." *Id.* (citing 473 U.S., at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* As explained by the United States Supreme Court,

> *Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device. [*Will*, 491 U.S. at 71.] "State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. *Id.* By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person." *Id.*

6

*Hafer*, 502 U.S. at 27; *see also Moore v. Cuttre*, No. CIV.09-2284 (RBK/JS), 2010 WL 2557682, at *4 (D.N.J. June 23, 2010) (state official sued in personal capacity is a person under § 1983 ) (citing *Hanani v. N.J. Dep't of Envtl. Prot.*, 205 Fed. Appx. 71, 79 (3d Cir. 2006)).

Here, Plaintiff has sued Defendants Lanigan and D'Ilio for damages in their official and personal capacities.[3] (See ECF No. 1-1, Complaint at ¶¶ 5, 7.) The Court will dismiss with prejudice the official capacity claims for damages against these two Defendants as barred by *Will*. The Court addresses the personal capacity damages claims against Defendants Lanigan and D'Ilio in the next section.

### B. Personal Capacity Claims Against Defendants Lanigan and D'Ilio

In the Complaint, Plaintiff also seeks to hold Defendants Lanigan and D'Ilio liable their personal supervisory capacities for the assault by the John Doe corrections officers. At the outset, *respondeat superior* is not a basis for section 1983 liability. As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that section 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (explaining that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*").

The Court begins its analysis by reviewing the requirements for individual supervisory liability under the Eighth Amendment, as recently clarified by the Third Circuit in *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other*

---

[3] Plaintiff does not seek injunctive/declaratory relief.

*grounds by Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015). There, the Third Circuit outlined "two general ways" in which a supervisor-defendant may be liable under the Eighth Amendment: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. The Third Circuit explained these two general types of supervisory liability as follows:

> [f]irst, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). "Failure to" claims – failure to train, failure to discipline, or, as in the case here, failure to supervise – are generally considered a subcategory of policy or practice liability.

*Id.*

The allegations in the Amended Complaint relate to Defendants Lanigan and D'Ilio's alleged failures to train and supervise, and thus implicate the first type of supervisory liability.[4] The Third Circuit in *Barkes* reaffirmed its four-part standard, established in *Sample v. Diecks*, for

---

[4] The second type of supervisory liability outlined in *Barkes* is premised on the supervisor's personal participation in the constitutional violations or his or her knowledge and acquiescence in his or her subordinates' violations. 766 F.3d at 316-17. "Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in ... the subordinate's conduct." *Bennett v. Washington*, No. CIV.A. 11-176, 2015 WL 731227, at *11 (E.D. Pa. Feb. 19, 2015) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 76–78 (2007)). There are no allegations in the Complaint that the Supervisory Defendants personally participated in the alleged violations or that they knowingly acquiesced to their subordinates' alleged violations of Mr. Grieco's rights.

determining whether an official may be held liable on a § 1983 Eighth Amendment claim for implementing deficient policies.  *See Barkes* at 317 (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)).  Under *Sample*,

> [t]o hold a supervisor liable for such an Eighth Amendment violation, the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

*Barkes*, 766 F.3d at 330.  As explained in *Barkes*, "[t]he essence of the type of claim [the court] approved in *Sample* is that a state official, by virtue of his or her own deliberate indifference to known deficiencies in a government policy or procedure, has allowed to develop an environment where there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur."  766 F.3d at 319-20.  Deliberate indifference in the supervisory context may be demonstrated by "(i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff['s] or (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met."  *Beers–Capitol v. Whetzel*, 256 F.3d 120, 136–37 (3d Cir. 2001) (emphasis added) (citing *Sample*, 885 F.2d at 1099).

Failure to train, discipline, and supervise are assessed under the same deliberate indifference standard as the failure to promulgate adequate policies.  *See Christopher v. Nestlerode*, 240 F. App'x 481, 489 n. 6 (3d Cir. 2007).  To establish deliberate indifference for failure to train, a plaintiff must show that policymakers were on actual or constructive notice that

flaws in their training or supervision caused subordinate officials to violate citizens' constitutional rights, and such notice generally requires contemporaneous knowledge of an incident or knowledge of a prior pattern of similar incidents and circumstances. *See id*. "A single constitutional violation can still provide the basis for municipal liability for failure to train, *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407–09 (1997), but only where 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights' that the policymaker's inaction amounts to deliberate indifference." [5] *Christopher*, 240 F. App'x. at 489-90 (citing *Canton*, 489 U.S. at 391); *see also Womack v. Moleins*, CIV. 10-2932, 2015 WL 420161, at *5 (D.N.J. Jan. 30, 2015) (same).

Although Plaintiff's Complaint states that (1) Defendants Lanigan and D'ilio failed to train and supervise the John Doe Defendants, and that (2) Defendant D'Ilio is "responsible for the proper training and supervision of all John Doe Defendants," (ECF No. 1-1. Complaint at ¶¶ 6-7, 44.), the Complaint does not identify any alleged flaws in the training or supervision provided to correctional officers by these Defendants and fails to provide <u>any facts</u> to suggest that Defendants Lanigan or D'Ilio were on notice of alleged flaws in the training or supervision of correctional officers. Notably, the Complaint does not provide facts suggesting that there was a pattern of prior similar incidents involving correctional officers at NJSP or that the alleged flaws in the training or supervision were so obvious and so likely to cause constitutional

---

[5] The Supreme Court set forth the standard for failure to train § 1983 liability in *Canton v. Harris*, 489 U.S. 378, 390 (1989), holding that "the duties assigned to specific officers or employees [or] the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." An example of a policy that meets this standard would be the failure of a municipality to train police officers to use the firearms they are required to carry. *Id.* at 390 n. 10.

violations that a single incident could state a claim for relief. As such, the Complaint, as drafted, fails to state § 1983 claims for supervisory liability against Defendants Lanigan and D'Ilio, and the Court dismisses these claims without prejudice at this time. To the extent discovery reveals facts that would permit Plaintiff to state claims for relief under § 1983 against Defendants Lanigan and D'Ilio in their personal supervisory capacities, Plaintiff may move to amend his Complaint before the Magistrate Judge.

### C. NJTCA Claims Against the Moving Defendants

The Court begins its analysis by reminding the Moving Defendants that on a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750 (3d Cir. 2005) (citing *Kehr Packages, Inc.*, 926 F.2d at 1409. The Moving Defendants first argue that Plaintiff cannot maintain a NJTCA claim against a public entity for the intentional torts committed by its employees because *respondeat superior* does not apply to such intentional torts under the NJTCA. (ECF No. 4-1, Lanigan Moving Br. at 6; ECF No. 11-1 D'Ilio Moving Br. at 6.) They appear to concede, however, that a Plaintiff may maintain a claim against public entities under the NJTCA based on negligent supervision and/or training, citing *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App. Div. 2007) (reversing, in relevant part, trial court's dismissal of NJTCA claims premised on theory that NJDOC negligent retained an employee with extensive disciplinary record).[6] (*See* ECF No. 4-1, Lanigan Moving Br. at 6-8.) Moving Defendants assert, however, that Plaintiff's Complaint fails to provide "specific facts" to support his claims of negligent training and supervision against the

---

[6] *See also Ewing v. Cumberland Cty.*, No. CIV. 09-5432 JBS/AMD, 2015 WL 1384374, at *30 (D.N.J. Mar. 25, 2015) ("Plaintiff's theory, that [Cumberland County] is liable for its employees' failure to properly supervise subordinates on the day Plaintiff was beaten, states a claim of negligent supervision that is not barred by the NJTCA. Plaintiff additionally states a claim of negligent failure to train").

11

Moving Defendants. (*Id.*) Curiously, in their moving briefs, Defendants do not provide the Court with citations to New Jersey court decisions that set out the standard(s) for pleading a negligent training/supervision claims against public entities and/or public employees.[7] In their reply briefs, the Moving Defendants attempt to clarify their arguments and contend that Plaintiff's NJTCA claims for negligent supervision/training are conclusory under *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2008).[8] Although Defendants contend that Plaintiff's Complaint, which was initially filed in state court, fails to meet the federal pleading requirements, the reply papers do not provide the Court with the elements of a claim for negligent supervision/training and states instead that Plaintiff has not provided "specific facts demonstrating an actionable claim of failure to train or supervise[.]" (*See, e.g.*, ECF No. 11-1, D'Ilio Reply Br. at 6.)

Without appropriate briefing, the Court declines to determine whether Plaintiff's Complaint states claims for relief against each Moving Defendants under the NJTCA based on a theory of failure to supervise/train. As such, the motion to dismiss the NJTCA claims is denied without prejudice.

---

[7]     Instead, NJDOC, NJSP, and Defendant Lanigan appear to argue, without citation to any supporting legal authority, that to state a claim for negligent supervision under the NJTCA, a plaintiff must satisfy the deliberate indifference standard applicable to section 1983 claims, which the Court considered in the previous section of this Opinion. For instance, the moving brief states that "Plaintiff has not alleged any facts showing that the specific harm he alleged . . . was so foreseeable and obvious to the supervisory defendants NJDOC, NJSP, or Lanigan, that their failure to take further preliminary action could only constitute <u>deliberate indifference to such risk.</u>" (ECF No. 4-1, Lanigan Moving Br. at 7 (emphasis added).) The brief provides no citations to legal decisions to support this purported standard.

[8]     In this regard, the Court notes that although a Plaintiff must "plead sufficient factual matter" to state a plausible claim for relief, *Iqbal*, 556 U.S. at 677, he need not set forth "detailed factual allegations." *Twombly*, 550 U.S. at 555; *see also In re Paulsboro Derailment Cases*, No. 13-784 RBK/KMW, 2013 WL 5530047, at *2 (D.N.J. Oct. 4, 2013) (explaining same).

V.  **CONCLUSION**

As explained in the foregoing Opinion, Plaintiff's § 1983 claims against the NJDOC and the NJSP are dismissed with prejudice.  The § 1983 claims for damages against Defendants Lanigan and D'Ilio in their official capacities are likewise dismissed with prejudice.  The § 1983 claims against Defendants Lanigan and D'Ilio in their personal capacities are dismissed without prejudice for the reasons stated in this Opinion.  The Court denies without prejudice the Moving Defendants motion to dismiss the NJTCA claims.[9]  An appropriate Order follows.

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: June 17, 2016

---

[9] The Court notes that the only federal claims remaining in this removal case at this time are alleged against unidentified John Doe Defendants.  The Court does not decline supplemental jurisdiction over Plaintiff's NJTCA claims at this time because it is possible that Plaintiff will move to amend the Complaint (1) to identify the John Doe Defendants and/or (2) to allege § 1983 claims against Defendants Lanigan and/or D'Ilio in their personal supervisory capacities.  The Court, however, will require Plaintiff to identify the John Doe Defendants within 90 days.