UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN GRIECO, | Civil Action No. 15-7881 (FLW) |
| Plaintiff, | |
| v. | OPINION |
| GARY LANIGAN, et al., | |
| Defendants. | |

**WOLFSON, United States District Judge:**

**I.     INTRODUCTION**

This matter has been opened to the Court by Defendants Gary M. Lanigan, Stephen D'Ilio, New Jersey Department of Corrections ("NJDOC"), and New Jersey State Prison ("NJSP") (collectively the "Moving Defendants") on their second motion to dismiss Plaintiff's Complaint.[1] In its prior Opinion and Order (ECF No. 14-15), the Court granted the Moving Defendants' motion to dismiss the federal claims against them but denied without prejudice their motion to dismiss the state law claims brought pursuant to the New Jersey Tort Claims Act ("NJTCA"). (*See id.*) Moving Defendants have filed a second motion to dismiss under Fed. R. Civ. P. 12(b)(6) directed at the NJTCA claims.[2] For the reasons stated below, the Court will grant the motion to dismiss.

---

[1] Stephen D'Ilio is improperly pleaded in the Complaint as "Stephen D'Illio."

[2] As noted in its prior Opinion and Order, it is not clear from the Complaint and attachments whether Plaintiff has sued the NJDOC as an entity separate from NJSP. (*See* ECF No. 1-1.) Because Defendants have moved to dismiss on behalf of both NJDOC and NJSP, the Court will consider whether Plaintiff has NJTCA claims against either the NJDOC or NJSP.

1

### II.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### a.  Facts Regarding the Alleged Assault

On March 23, 2015, Plaintiff was housed alone in a cell on 7B Wing, an administrative segregation unit of NJSP.  (1-1, Complaint at ¶¶ 10-12.)  The Complaint alleges that the only persons with access to Plaintiff's cell were NJSP corrections officers and personnel.  (*Id.* at ¶ 12.)  The Complaint further alleges that in the early morning hours of March 23, 2015, five corrections officers, identified in the Complaint as "John Does 1-5", entered Plaintiff's cell while he was sleeping and "savagely and recklessly attacked" him, causing serious injuries to his head.  (*Id.* at ¶¶ 15-19.)  After the attack, John Does 1-5 also allegedly left Plaintiff bleeding and unconscious on the floor of his cell for several hours.  (*Id.* at ¶¶ 20-21.) Plaintiff has also sued "John Does 6-10," who are described in the Complaint as "supervisory staff with direct supervising authority over John Does 1-5 at NJSP . . . on the night and morning of March 22 to March 23, 2015, who on information and belief failed to provide adequate training and supervision to John Does 1-5."  (*Id.* at ¶ 9.)

#### b.  Facts Regarding the Alleged Involvement of Defendants Lanigan and D'Ilio

The "Parties" section of the Complaint includes the following general allegations regarding Moving Defendants Lanigan and D'Ilio:

> 5.     Garry [sic] M. Lanigan is the Commissioner of the New Jersey Department of Corrections and is responsible for the custody and care of inmates housed in State correctional facilities, including New Jersey State Prison, and has his principal place of business at Whittlesey Road, Trenton, NJ 08625, in the County of Mercer and is being sued in his official and personal capacity.
>
> . . . .
>
> 7.     Stephen D'Illio [sic] was the administrator of the New Jersey State Prison and was responsible for the custody and care of inmates housed at the New Jersey State Prison located at 300 2nd Crass St., Trenton, NJ 08625 Mercer County, and was responsible

2

>> for the proper training and supervision of all John Doe Defendants, and is being sued in his official and personal capacity.

(*Id.* at ¶¶ 6-7.) The "Background Information" section of the Complaint, which describes the alleged assault on Plaintiff, alleges that "Defendants Gary M. Lanigan , NJDOC, Stephen D'Ilio, and John Does [6-10], had a duty to train officers and to protect [Plaintiff] from the malicious, wanton and reckless behavior of John Does 1-5."[3] (*Id.* at ¶ 22.) In Count I of the Complaint, which is brought pursuant to the NJTCA, alleges that "Gary M. Lanigan, Stephen D'Illio [sic], and John Does 6-10 are responsible for the training and supervision of John Does 1-5 and failed to provide adequate and appropriate training and supervision." (*Id.* at ¶ 29.) Count II of the Complaint, brought pursuant to 42 U.S.C. § 1983, alleges that "[t]he use of force by John Does 1-5 and the failure of Stephen D'Illio [sic], Gary M. Lanigan, the NJDOC, or John Does 6-10 to supervise and protect Mr. Grieco or to appropriately train John Does 1-5, was a violation of the 8th Amendment rights of Mr. Grieco." (*Id.* at ¶ 44.)

### c. Procedural History of this Litigation

Plaintiff, who is represented by counsel, initially filed his two-count Complaint in Mercer County Superior Court on October 10, 2015. The matter was removed by Defendants NJDOC and Gary Lanigan on November 4, 2015. (ECF No. 1, Notice of Removal.) Defendants Lanigan, NJDOC, and NJSP filed a motion to dismiss the Complaint on November 24, 2015. (ECF No. 4.) Defendant D'Ilio subsequently moved to dismiss the Complaint on January 19, 2016. (ECF No. 11.) On June 17, 2016, the Court granted the Moving Defendants' motions to dismiss the § 1983 claims against them. (ECF Nos. 14-15.) The Court dismissed with prejudice (1) the § 1983 claims as to Defendants NJDOC and NJSP and (2) the official capacity § 1983

---

[3] The reference to John Does 11-15 appears to refer to John Does 6-10, who are described as "supervisory staff with direct supervisory authority over John Does 1-5 at NJSP." (Compl. at ¶ 9.)

claims for damages against Defendant Lanigan and D'Ilio. The Court dismissed without prejudice the personal capacity § 1983 claims against Defendants Lanigan and D'Ilio. (ECF No. 14, Op. at 6-11.) The Court, however, denied without prejudice the motion to dismiss with respect to the remaining NJTCA claims against all Moving Defendants, finding that they did not meet their burden to show that Plaintiff failed to state a claim for relief. (ECF No. 14, Op. at 11-12.) The Court also noted that the only federal claims remaining in this removal case were alleged against unidentified John Doe Defendants. As such, the Court provided Plaintiff with a 90-day period in which to identify the John Doe Defendants. (*Id.* at 13 n. 9.)

On June 20, 2016, State Defendants wrote to the Court seeking permission to file a second motion to dismiss to address the remaining NJTCA claims. (ECF No. 16.) In a June 21, 2016, letter to the Court, Plaintiff's counsel stated that Plaintiff needed to engage in discovery with Defendants Lanigan and D'Ilio in order to identify the John Doe Defendants, and that these Defendants should not be dismissed from the suit until the 90-period of discovery was over. (ECF No. 17.) The Court issued an Order that (1) permitted the Moving Defendants to file a second motion to dismiss and (2) also permitted Plaintiff to engage in discovery with the Moving Defendants in order to identify the John Doe Defendants within the 90-period set out by the Court in its prior Order.[4] (*See* ECF No. 19.)

On July 1, 2016, the State filed its second motion to dismiss directed at the NJTCA claims. (ECF No. 20.) Plaintiff, who is proceeding through counsel, did not file opposition to the motion. Although the 90-day period for discovery has now expired, Plaintiff has not filed an

---

[4] It is not clear from the docket whether any discovery has taken place.

Amended Complaint to identify the John Doe Defendants or to allege § 1983 claims against Defendants Lanigan and D'Ilio in their personal capacities.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R .Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create what amounts to a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit has required a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. 678–79 ("While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations."). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV. ANALYSIS

### a. NJTCA Claims Against the Moving Defendants

In their motion to dismiss, the Moving Defendants argue that the NJTCA claims against them must be dismissed because there is no vicarious liability for intentional torts under the NJTCA, and that the Complaint fails to plead sufficient facts to state a claim for negligent supervision and/or training under the NJTCA.

Under some circumstances, a public entity – such as the NJDOC and NJSP – may be held liable for the torts of its employees under a theory of *respondeat superior*. As explained by the New Jersey Appellate Division in *Hoag v. Brown*, "[a] public entity 'is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.'" 397 N.J. Super. 34, 53–54 (App. Div. 2007) (citing N.J.S.A. 59:2–2a); *see also Carter v. Reynolds*, 345 N.J. Super. 67, 783 A.2d 724, 726 (App. Div.2001 ("[A]n employer is vicariously liable for the torts of an employee only if the employee was acting within the scope of his or her employment at the time the tort was committed."), *aff'd*, 175 N.J. 402, 815 A.2d 460 (2003). "Conduct is generally considered to be within the scope of employment if, 'it is of the

kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master." *Di Cosala v. Kay*, 91 N.J. 159, 450 A.2d 508, 513 (N.J.1982) (quoting Restatement (Second) of Agency § 228 (1957)); *see also Gattas v. City of Jersey City*, No. CIV.A. 07-4242(JAG), 2010 WL 892187, at *12 (D.N.J. Mar. 5, 2010) (finding that defendant police officer was acting within his role as an on-duty police officer when he handcuffed plaintiff and that officer's arrest of plaintiff was actuated at least in part to serve the master). N.J.S.A. § 59:2–2a "is the primary source of public entity liability, in that '[i]t establishes the principle of vicarious liability for all public entities for 'injury proximately caused by an act or omission of a public employee within the scope of his employment' and thereby relies upon the established principles of law such as the doctrine of *respondeat superior*." *Gattas v. City of Jersey City*, No. CIV.A. 07-4242(JAG), 2010 WL 892187, at *5 (D.N.J. Mar. 5, 2010) (citing *Wright v. State*, 169 N.J. 422, 778 A.2d 443, 451 (N.J.2001) (quoting Comment to N.J. Stat. Ann § 59:2–2).

The NJTCA also provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." *Hoag*, 397 N.J. Super at 53–54 (citing N.J.S.A. 59:2–10). As such, there is "no vicarious liability by a public entity for intentional torts committed by its employees; that is, with respect to such intentional torts, the theory of *respondeat superior* does not apply." *Id.* (citing *McDonough v. Jorda*, 214 N.J. Super. 338, 350 (App. Div. 1986), *certif. denied*, 110 N.J. 302, 540 A.2d 1282 (1988), *cert. denied sub nom.*, *Jorda v. City of New Brunswick*, 489 U.S. 1065 (1989).

Here, John Does 1-5 allegedly entered Plaintiff's cell while he was sleeping and "savagely and recklessly attacked" him with their hands, feet, batons, and other objects. (Compl.

at ¶ 16.)  After they assaulted him, John Does 1-5 allegedly left Plaintiff bleeding on the floor his cell for several hours without medical care.  (*Id.* at ¶ 20.)  Although Plaintiff's Complaint states in a conclusory fashion that the attack was "reckless," the facts provided in the Complaint suggest that the beating by John Does 1-5 was an unprovoked, intentional assault.  The decision to leave him bleeding on the floor of his cell also appears to be intentional misconduct.  The Complaint provides no facts from which the Court could find that the assault and failure to provide medical care to Plaintiff was undertaken in the course of employment, *i.e.*, that the conduct is of the type John Does 1-5 are employed to perform and that the conduct was actuated in least in part by a purpose to serve the master.   Because the conduct of John Does 1-5, as described in the Complaint, can only be construed as willful misconduct and/or criminal conduct, *see* N.J.S.A. 59:2–10, NJDOC and NJSP (and by extension, Defendants Lanigan and D'Ilio) may not be held liable for that conduct under a theory *respondeat superior*.  As such, to the extent Plaintiff seeks to hold the Moving Defendants liable for the misconduct of John Does 1-5 under a theory of *respondeat superior*, such NJTCA claims are dismissed without prejudice.

       The NJTCA, however, also permits claims of negligent hiring or negligent supervision, which covers acts committed outside the scope of employment.[5] *See Hoag*, 397 N.J. Super. at 54 (collecting cases); *see also Adams v. City of Camden*, 461 F.Supp.2d 263, 269–70 (D.N.J. 2006) as support for claim against county for negligent hiring of police officer); *DiCosala*, 91 N.J. at

---

[5] As explained by the New Jersey Supreme Court in *DiCosala v. Kay*, "the tort of negligent hiring addresses the risk created by exposing members of the public to a potentially dangerous individual, while the doctrine of *respondeat superior* is based on the theory that the employee is the agent or is acting for the employer." *DiCosala v. Kay*, 91 N.J. 159, 172-73 (1982); *V.A. ex rel., M.A. v. New Jersey Nat. Guard Youth Challenge Program*, No. CIV A 06-347 JBS, 2007 WL 2010940, at *4 (D.N.J. July 9, 2007) (explaining same).

172–74 (in private sector, tort of negligent hiring addresses different wrong from that sought to be redressed by *respondeat superior* doctrine); *Pacifico v. Froggatt*, 249 N.J. Super. 153, 154–55, 157(Law Div.1991) (New Jersey Transit could be liable for negligent hiring of its officers notwithstanding that public entities cannot be liable for the willful acts of its employees); Harry A. Margolis & Robert Novack, Claims Against Public Entities, comment on N.J.S.A. 59:2–10 (Gann 2007) ("Clearly this section does not prevent allocation of fault to a public entity where that entity is liable for the negligent supervision of an employee who has engaged in willful misconduct."). The TCA also permits causes of action for related claims of negligent training. *See Denis v. City of Newark*, 307 N.J. Super. 304, 312-13 (App. Div.1988) (holding that the Tort Claims Act did not alter the previously established body of law that public entities could be liable for negligent training and supervision claims); *V.A. ex rel., M.A. v. New Jersey Nat. Guard Youth Challenge Program*, No. CIV A 06-347 JBS, 2007 WL 2010940, at *3 (D.N.J. July 9, 2007) (same).

The test for negligent hiring has been explained in *Adams v. City of Camden*, 461 F. Supp. 2d 263, 269 (D.N.J. 2006) as follows:

> In New Jersey, the tort of negligent hiring has as its constituent elements two fundamental requirements. The first involves the knowledge of the employer and foreseeability of harm to third persons. An employer will only be held responsible for the torts of its employees beyond the scope of the employment where it knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons. The second required showing is that, through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury. *Di Cosala v. Kay*, 91 N.J. 159, 173–74, 450 A.2d 508 (1982) (citations omitted).

Similarly, under New Jersey law, liability may also be imposed on an employer who fails to perform its duty to train and supervise its employees. *See Vasquez v. Gloucester Cty.*, No.

9

CIV.A. 13-4146 JEI, 2015 WL 3904550, at *5 (D.N.J. Jun. 25, 2015) (citing *Tobia v. Cooper Hosp. Univ. Med. Ctr.*, 136 N.J. 335, 346 (1994)); *see also Ewing v. Cumberland Cty.*, No. CIV. 09-5432 JBS/AMD, 2015 WL 1384374, at *30 (D.N.J. Mar. 25, 2015) ("Plaintiff's theory, that [Cumberland County] is liable for its employees' failure to properly supervise subordinates on the day Plaintiff was beaten, states a claim of negligent supervision that is not barred by the NJTCA. Plaintiff additionally states a claim of negligent failure to train"). In order to establish a prima facie claim for negligent training, plaintiff must show that (1) the defendant owed a duty of care to the plaintiff, (2) defendant breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff. *Stroby v. Egg Harbor Twp.*, 754 F.Supp.2d 716, 721 (D.N.J. 2010) (citing *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987)). "A plaintiff bears the burden of establishing [each of] those elements by some competent proof." *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (internal quotation marks and citations omitted).

    Here, the Complaint does not contain any facts to suggest that any of the Moving Defendants had reason to know that any of John Does 1-5 were particularly unfit, incompetent, or dangerous, or that the Moving Defendants could have foreseen that the John Does 1-5 possessed qualities that created a risk of harm to Plaintiff or to inmates generally. *See Di Cosala*, 91 N.J. at 174. Furthermore, the Complaint does not provide sufficient facts to suggest that the Moving Defendants breached their duty of care to Plaintiff by providing inadequate supervision of and/or training to John Does 1-5, or that the deficient supervision and/or training was a proximate cause of Plaintiff's injuries. Rather, the Complaint alleges in a conclusory manner that Defendants Lanigan, D'Ilio, and John Does 6-10 are responsible for the training and supervision of John Does 1-5, and failed to adequately train and supervise them, which resulted

in injuries to Plaintiff.  (*See* Compl. at ¶¶ 22, 29, 35.)  There are no facts regarding the alleged deficiencies in the supervision and/or training and fails to link any alleged deficiencies in supervision and/or training to the assault and/or failure to provide medical care.  Although a Plaintiff need not set forth "detailed factual allegations" to survive a motion to dismiss, *see Twombly*, 550 U.S. at 555; *see also in re Paulsboro Derailment Cases*, No. 13-784 RBK/KMW, 2013 WL 5530047, at *2 (D.N.J. Oct. 4, 2013) (explaining same), he must "plead sufficient factual matter" to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 677.  Here, the Complaint contains insufficient factual matter to suggest that Moving Defendants Lanigan or D'Ilio (or John Does 6-10) failed to supervise and/or train John Does 1-5, and that the failure to supervise and/or train caused Plaintiff's injuries.  Because the failure to supervise and/or train claims are insufficiently pleaded against Defendants Lanigan, D'Ilio, and John Does 6-10, the NJDOC and NJSP may not be held liable for the alleged failures to supervise and/or train.[6]  As such, the Court will dismiss without prejudice the NJTCA claims for failure to supervise and/or train as to all Moving Defendants.[7]

---

[6] Moving Defendants have not briefed the issue, and the Court assumes without deciding that Plaintiff could also state a claim against NJDOC or NJSP had he sufficiently alleged a claim for negligent failure to supervise and/or train.

[7] The Court does not dismiss the claims against John Does 6-10 at this time, as they have not been identified or served, but nevertheless notes that the Complaint contains insufficient facts to state NJTCA claims for failure supervise and/or train against John Does 6-10, who are alleged to be the direct supervisors of John Does 1-5 at the time of the incident.

11

## V. CONCLUSION

For the reasons stated in this Opinion, the Court will grant the Moving Defendants' motion to dismiss the NJTCA claims against them. The dismissal is without prejudice. An appropriate Order follows.

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: January 27, 2017